MARY ORMOND v. R. S. HAYES, RECEIVER, ET ALS.

(Case No. 1469.) !

1. CHARGE OF THE COURT.—Where the pleading alleged, and evidence was introduced, to the effect that the railway company had agreed to stop its train at a particular point, viz., a section-house, and then refused so to do, in an action for damages against the company it was error in the court to charge that, "under the allegations and proof, it is immaterial to the plaintiff's right to recover, whether the train was stopped at the section-house or not, and in making up your verdict you will not consider that question."

2. SAME.—Such a charge is also, to some extent, one upon the weight of evidence.

3. SAME.—A charge of the court as follows: that as soon as "the deceased alighted in safety from the car in which he and his wife (the plaintiff) were carried, then the relation ceased, and from that time the defendants owed them no duty as passengers," is too strong and unqualified in its character.

4. CARRIER AND PASSENGER.—The relation of carrier and passenger does not necessarily cease where the latter alighted from the car and still aids the carrier's servants in removing his baggage from the car; nor does the act of so aiding make him a servant of the carrier.

ERROR from Anderson. Tried below before the Hon. P. F. Edwards.

Mary Ormond, for the benefit of herself and minor son, brought this suit against the I. & G. N. Railroad Company and its receiver, R. S. Hayes, for $30,000 damages, claimed for the wilful and negligent killing of James Ormond, her husband, by the appellees and their servants at Jacksonville, Texas, December 26, 1878. Ormond, his wife and child were to stop at the section-house, one-quarter of a mile distant from Jacksonville station; the train (which was a freight), however, did not stop until it reached that station. There Ormond and his family alighted, and while he was engaged in seeing after their baggage, consisting of household furniture, etc., the engine, under the control of its fireman, while being used for switching purposes, struck its tender against Ormond, crushing and killing him.

The appellees pleaded:

*First.* The general issue.

*Second.* That James Ormond was voluntarily assisting defendants' servants at the time he was killed, and sustained the relation of fellow-servant to them, and that if he was negligently killed his death was caused by the negligence of his fellow-servants.

*Third.* That while deceased was a volunteer aiding defendants' servants in doing their work, he accidentally fell out of the car and came in contact with the car that killed him, without negligence of

defendants or their servants, and that he voluntarily and negligently placed himself in danger and contributed to his injury and death.

*Fourth.* That deceased was killed in consequence of his own accident and misadventure, in that he accidentally fell out of the car, and in the fall struck the car wheel that killed him, while it was carefully and properly moving in its usual routine of duty.

The case was tried by a jury on the 30th of November and 1st of December, A. D. 1881, and a verdict was returned for defendants (appellees), and judgment was rendered accordingly.

Appellant filed a motion for a new trial on the 10th day of December, 1881, which was overruled by the court and notice of appeal given.

The appeal not having been perfected, Mrs. Ormond sued out the writ of error, through means of which the case now comes before this court.

*Marsh Glenn*, for plaintiff in error, cited: H. & G. N. R. R. Co. v. Parker, 50 Tex., 330; Brandon v. Manuf'g Co., 51 Tex., 121; R. R. Co. v. Miller, 51 Tex., 270; Stewart v. I. & G. N. R. R. Co., 53 Tex., 289; H. & T. C. R'y Co. v. Sympkins, 54 Tex., 615; H. & T. C. R'y Co. v. Gorbett, 49 Tex., 573; Field on Damages, sec. 148; Wood on Master and Servant, pp. 701, 835, 907; Shearman & Redfield on Negligence, 275; Redfield on Carriers, 514.

*Greenwood & Gosch*, for defendants in error, cited: H. & T. C. R. R. Co. v. Clemmons, 55 Tex., 91; R. R. Co. v. Le Gierse, 51 Tex., 189; R. R. Co. v. Jones, 5 Otto, 439; Pierce on Railroads, p. 310.

WEST, ASSOCIATE JUSTICE.— We have examined the record in this case with more than usual care. While the charge of the court, in the main, presents the issues between the parties very clearly and fairly, yet in some respects it was liable to objection, and its language may possibly have unduly influenced the jury in passing upon the facts in evidence before them.

In the pleadings the plaintiff in error alleged and introduced some evidence in support of the averment that the defendant in error agreed to stop its train at its section-house, one-fourth of a mile west from Jacksonville, and that when that point was reached, it refused or declined to stop its train there, but on the contrary carried the deceased and the plaintiff a short distance further, to the town of Jacksonville, before stopping its train. On this subject the court charged the jury as follows: " Under the allegations and proof it is

immaterial to the plaintiff's right to recover, whether the train was stopped at the section-house or not, and in making up your verdict you will not consider that question."

We think, under the state of the pleadings and evidence in this case, that this was perhaps stating the matter somewhat too strongly against the plaintiff in error and her infant child. It seems, also, to be perhaps to some extent a charge upon the weight of evidence, or at least was calculated to create that impression on the minds of the jury. It was not proper, under the evidence, to wholly withdraw the consideration of that matter from the jury.

We think, also, under the facts of this case, that the court laid down the law in rather too strong and unqualified terms, when it informed the jury that as soon as the deceased " alighted in safety from the car or caboose in which he and his wife (the plaintiff) were carried, then the relation of passenger ceased, and from that time the defendants owed them no duty as passengers," etc., etc., and more to the same effect. The evidence showed that the deceased was received as a passenger on the defendants' train, and that his wife, infant child and nurse, who were under his charge, were also so received as passengers. The proof also discloses the fact that the defendants' servants, without objection, received from him, at the same time, as baggage to be by them transported, a considerable number of bulky articles of furniture, bedding and clothing, which they agreed and bound themselves to deliver to him at his point of destination. It does not appear that for this considerable amount of baggage, consisting of a number of articles, that the defendants gave him any check, receipt or any kind of evidence or token of their possession of it. Under all the circumstances disclosed in evidence, when we consider the nature and quantity of the baggage and the absence of any baggage checks or receipt to the deceased, we think he, as such passenger, had a right to go to the baggage car for the purpose of identifying and claiming his property and receiving it from the employees of defendants, and if he did no more than simply aid and assist the defendant's employees in identifying and removing his own baggage from the car to the platform, that the court stated the law too strongly against plaintiff when it informed the jury that these acts of his, in relation to his own baggage, constituted him a fellow-servant with the employees of defendants. We think, under the special facts of this case, as disclosed in the record, that the relation of carrier and passenger had not entirely ceased, for all purposes, to exist, and that the deceased had the right, under the facts of this case, to look after his baggage, and that by so doing,

and by aiding the servants of defendants in selecting and removing it from the car, he did not lose all the rights of a passenger and thereby become a servant and an employee of defendants. The charge of the court, as framed, did not present this issue as fairly and fully to the consideration of the jury as should have been done.

Under all the circumstances we are of the opinion that the judgment should be reversed and the cause remanded for a new trial. It is therefore so ordered.

REVERSED AND REMANDED.

[Opinion delivered October 19, 1883.]